IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ADVANCED CRITICAL DEVICES, INC.,** | **CASE NO. 1:21-CV-02227** |
| Plaintiff, | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **BOSTON SCIENTIFIC CORPORATION,** | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Currently pending is Defendant Boston Scientific Corporation's ("BSC") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Doc. No. 9.) Plaintiff Advanced Critical Devices, Inc. ("ACD") filed an Opposition Memorandum on February 7, 2022, to which BSC replied on February 14, 2022. (Doc. Nos. 12, 17.) On February 16, 2022, ACD filed a Motion for Leave to File Sur-reply Brief. (Doc. No. 18.) BSC opposed ACD's request on February 17, 2022. (Doc. No. 20.) ACD filed a Reply in support of its request on February 22, 2022. (Doc. No. 21.) For the following reasons, BSC's Motion to Transfer Venue is denied. ACD's Motion for Leave to File Sur-reply Brief is denied.

**I.    Background**

ACD is an Ohio corporation, and its principal place of business is in Brecksville, Ohio. (Doc. No. 15, ¶ 2.) ACD is engaged in the business of distributing specialty medical products throughout Ohio and other territories within the United States. (*Id.*)

Under the terms of various distribution agreements, ACD distributed certain "cryoablation" products within a specified multi-state territory on behalf of third-party Galil Medical, Inc. (*Id.* at ¶ 10.) The most recent distribution agreement between ACD and Galil is dated July 1, 2019 (the

"Distribution Agreement"). (*Id.*) The Distribution Agreement has a forum-selection clause that provides as follows:

> **27** **Governing Law and Jurisdiction**
>
> 27.1 This Agreement (and any dispute, controversy, proceedings or claim of whatever nature arising out of or in any way relating to this Agreement or its promotion) shall be governed by and construed in accordance with Minnesota law. Each of the Parties to this Agreement hereby irrevocably submits to the exclusive jurisdiction of the state or federal courts of Minnesota for the determination of any question or dispute arising in connection with this Agreement (including without limitation, claims for set-off or counterclaims).

(Doc. No. 9-3, ¶ 27.)

In August 2019, through a series of mergers and acquisitions, BSC became the successor-in-interest to Galil's rights and obligations under the Distribution Agreement with ACD. (Doc. No. 15, ¶ 12.) Approximately 18 months thereafter, by letter dated February 23, 2021, BSC provided ACD with the contractually required nine months' notice that BSC was terminating its Distribution Agreement with ACD. (*Id.* at ¶ 13.) Shortly thereafter, in March 2021, BSC notified ACD that, notwithstanding the nine months' notice required under the Distribution Agreement, BSC intended to transition some or all of ACD's accounts well in advance of the nine months' notice expiration period. (*Id.* at ¶ 14.)

After some negotiating, the parties entered into a Transition Services Agreement (the "TSA") in July 2021. (*Id.* at ¶ 16.) According to the TSA, ACD agreed to perform certain transition services for BSC and deliver "Transition Letters" to its customers, announcing the transition of sales and services from ACD to BSC. (*Id.* at ¶ 17.) In return, BSC agreed to compensate ACD $10,000 (or $25,000 with respect to eight (8) identified accounts) for each acknowledged Transition Letter that it provided to BSC, up to a maximum of $1,000,000 in transition payments. (*Id.* at ¶ 18.) According

to the TSA, the delivery of each Transition Letter to BSC deems the account transition completed and gives rise to BSC's obligation to pay ACD the applicable Transition Payment. (*Id.* at ¶ 19.) ACD alleges that the TSA expressly provides that "the Transition Payments are due 'in the month immediately following each month in which an account transition is deemed completed.' [Exh. 1, Paragraph 4.1][.]" (*Id.* at ¶ 20.) ACD alleges that in September and October of 2021, it provided BSC with acknowledged Transition Letters entitling Plaintiff to $425,000.00 in Transition Payments to be paid on or before October 31, 2021 and $575,000 in Transition Payments to be paid on or before November 30, 2021, but that BSC filed to make these payments totaling $1,000,000.00. (*Id.* at ¶¶ 21-24.)

The TSA also contained a forum-selection clause, which provides as follows:

> 16. **Governing law.** This Agreement shall be construed in accordance with and governed by the law applicable in the jurisdiction where Company is located, and the parties agree to the exclusive jurisdiction of the courts in such jurisdiction.

(Doc. No. 9-1, PageID# 143.) The TSA defines "Company" as "Boston Scientific Corporation, a Delaware corporation having its offices at 300 Boston Scientific Way, Marlborough, MA, 01752 ('Company')." (*Id.* at PageID# 139.)

On November 23, 2021, ACD filed a complaint against BSC asserting a breach of contract claim and an unjust enrichment claim.[1] (*See* Doc. No. 1.) On January 24, 2021, BSC filed an Answer to the complaint. (Doc. No. 8.) The same day, BSC also filed the instant Motion to Transfer Venue. (Doc. No. 9.) Therein, BSC seeks to enforce the TSA's forum-selection clause and moves the Court to transfer this case to the United States District Court of Minnesota, pursuant to 28 U.S.C. § 1404(a).

---

[1] ACD filed its First Amended Complaint on February 14, 2022, in which it alleges that BSC failed to make both the October 2021 *and* November 2021 transition payments to ACD. (*See* Doc No. 15.) When ACD filed its initial complaint, the time had not yet expired for BSC to make its November 2021 payment to ACD.

(*Id.* at PageID# 125.) On February 7, 2022, ACD filed its Opposition to BSC's Motion, to which BSC replied on February 14, 2022. (Doc. Nos. 12, 17.)

On February 16, 2022, ACD filed a Motion for Leave to File Sur-reply Brief, asserting that it should be allowed the opportunity to address allegedly "novel" issues raised in BSC's Reply brief. (Doc. No. 18, PageID# 282.) On February 17, 2022, BSC filed an Opposition to ACD's Motion for Leave to File Sur-reply, to which ACD replied on February 22, 2022. (Doc. Nos. 20, 21.)

## II. Motion for Leave to File Sur-reply

In ACD's Motion for Leave to File Sur-Reply Brief, ACD requests leave to file a sur-reply and its own affidavits to respond to arguments raised in BSC's Reply that ACD contends were not raised in the original Motion. (Doc. No. 18.) In opposing ACD's request, BSC asserts that it did not raise any new arguments in its Reply but simply responded to arguments that ACD raised in its Opposition. (Doc. No. 20.) The Court finds that ACD seeks to set forth arguments in its sur-reply that could have been raised, or were raised, in its Opposition.

"Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)); *accord Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010) ("This Court grants leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply."). On the other hand, when a reply does not include new arguments or evidence, a sur-reply is "an

impermissible attempt to have the last word." *Attractive Surgical, LLC v. Cleveland Clinic Found.*, No. 1:19 CV 1212, 2019 WL 11075734, at *4 (N.D. Ohio Oct. 31, 2019).

ACD proffers three reasons why it should be permitted to respond via sur-reply to BSC's Reply. First, ACD contends it should be allowed to respond to BSC's arguments about BSC's purported private interests, which BSC only raised in its Reply. (Doc. No. 18, PageID# 283.) However, BSC only addressed its private interests after ACD argued in its Opposition that BSC failed to address private interests. ACD had the opportunity to address, and did address, the private interests at issue in this case. (*See* Doc. No. 12, PageID# 204-05.) As such, any attempt by ACD to re-address these private interests is an improper attempt to have the last word and the Court will not permit it. Second, ACD contends that it should be "permitted to file its own representative's affidavit(s) to proffer facts supporting its private interests in having the case tried in this District" because BSC submitted the Declaration of Amanda Seymour, a senior manager at BSC, with its Reply. (Doc. No. 18, PageID# 284.) However, ACD had the opportunity to submit evidence regarding its private interests when it filed its Opposition. Thus, the Court will not allow ACD to file a competing affidavit when it already had the opportunity to do so. Finally, ACD contends that it should be permitted to analyze and distinguish the cases that BSC cited in its Reply brief in support of BSC's language regarding mandatory forum-selection clauses. (*Id.* at PageID# 286.) This is plainly an attempt to have the last word on the issue of mandatory forum-selection clauses. ACD already had the opportunity to make its argument about mandatory versus permissive forum-selection clause language. In requesting to "distinguish" BSC's cited cases, ACD does not propose any new arguments, but endeavors to rehash the same arguments it made in its Opposition. Accordingly, ACD's Motion for Leave to File Sur-Reply is denied.

### III.     Motion to Transfer Venue

####     A.     Standard of Review

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Ordinarily, when considering a motion brought under 28 U.S.C. § 1404(a), a district court "must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  After weighing the relevant factors, the court must then "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Id.* at 62-63 (quoting 28 U.S.C. § 1404(a)).  The party requesting the transfer "bears the burden of proof to show the factors weigh 'strongly' in favor of transfer."  *Goodrich Corp. v. Winterthur Int'l Am. Ins. Co.*, No. 5:02CV367, 2002 WL 31833646, at *6 (N.D. Ohio June 17, 2002) (quoting *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998)).

However, this analysis changes "when the parties' contract contains a valid forum-selection clause."  *Atl. Marine*, 571 U.S. at 63.  In that situation, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."  *Id.* at 52.  To assess whether a forum-selection clause is enforceable, a court must consider "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust."  *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Sec. Watch, Inc. v.*

*Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.*

Forum-selection clauses are interpreted according to federal common law rules of contract interpretation. *Id.* at 826; *accord. CBS Boring & Machine Co., Inc. v. Eisenwerk Brühl GmbH*, No. 18-13623, 2019 WL 1455161, at *2 (E.D. Mich. Apr. 2, 2019). Federal common law interprets forum-selection clauses with ordinary contract principles. *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990).

  **B.**  **Analysis**

BSC argues that the TSA forum-selection clause is enforceable and, thus, the Court should apply the factors under § 1404(a), as modified by *Atlantic Marine*, to conclude that this case should be transferred to the jurisdiction where BSC is located. (Doc. No. 9, PageID# 130-32.) BSC argues that the TSA's forum-selection clause is mandatory, not permissive. (*Id.*) BSC argues that the TSA indicates that the parties intended to select just one jurisdiction in their forum-selection clause: Minnesota. (*Id.* at PageID# 132-33.) BSC argues that the TSA's language supports BSC being "located in" Minnesota because the cryoablation business at issue between ACD and BSC is part of BSC's "Peripheral Interventions" business, which is based in Maple Grove, Minnesota. (*Id.* at PageID# 134.)

In its Opposition, ACD contends that, though BSC is incorporated in Delaware and headquartered in Massachusetts, it is also located in Ohio because it does business here and is registered as a foreign agent with the Ohio Secretary of State. (Doc. No. 12, PageID# 193-94.) ACD also contends that BSC's "Peripheral Interventions" business is not a separate and distinct business entity from BSC itself. (*Id.*) Further, ACD contends that *Atlantic Marine* is inapposite to the instant

case because the TSA's forum-selection clause is permissive, rather than mandatory, and therefore does not mandate jurisdiction within Minnesota only. (Doc. No. 12, PageID# 197-201.) ACD argues that the TSA's forum-selection clause is properly interpreted to be permissive because it fails to specify a particular forum, court, or state. (*Id.* at PageID# 199.) ACD argues that the TSA contains no reference whatsoever to either Minnesota or BSC's "Peripheral Interventions" business. (*Id.*)

As an initial matter, the Court concludes that the instant forum-selection clause is enforceable. ACD does not assert that the forum-selection clause was either obtained by fraud, duress, or other unconscionable means, that the designated forum would ineffectively or unfairly handle this matter, or that the designated forum is so inconvenient that requiring ACD to bring suit there would be unjust. *See Wong*, 589 F.3d at 828. Having concluded that the forum-selection clause is enforceable, the Court now turns to two questions: first, is the forum-selection clause mandatory, and second, where is the Company, as defined in the TSA, located?

### 1. Whether the Forum-Selection Clause is Mandatory

Some courts, including the Northern District of Ohio, "have found that *Atlantic Marine* does not apply where the forum selection clause is permissive and, therefore, a court performs the typical § 1404 analysis," in which a court looks to the private interest factors for and against transfer, rather than deferring to the forum-selection clause as required by *Atlantic Marine*. *F.D.I.C. v. Paragon Mortg. Servs., Inc.*, No. 1:15-cv-2485, 2016 WL 2646740, at *3 (N.D. Ohio May 10, 2016). In *Paragon*, the court reasoned that *Atlantic Marine* applied only to *mandatory* forum-selection clauses because the Supreme Court concluded that "the calculus [as to whether to transfer a case under § 1404(a)] changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the *most proper forum*." *Id.* (quoting *Atlantic Marine*, 134

S.Ct. at 581) (emphasis added). The court reasoned that "[b]y indicating 'the most proper forum,' the Supreme Court could only be referring to mandatory clauses as permissive clauses only authorize jurisdiction in a forum but do not require it." *Id.* Further, the court observed that the Supreme Court concluded that "when a plaintiff agrees by contract to bring suit *only in a specified forum*," then the plaintiff has exercised its venue privilege before a dispute arises and must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed. *Id.* (emphasis added). The court reasoned that the use of the phrase "only in a specified forum" seemed "to indicate application to mandatory forum selection clauses as permissive clauses do not provide that a suit may be brought 'only' in a specified forum." *Id.* at *4. Thus, per *Paragon Mortg.*, if the instant forum-selection clause is permissive, then this Court need not defer to the forum-selection clause as required under *Atlantic Marine*. *Id.*

"A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum." *Braman v. Quizno's Franchise Co., LLC*, No. 5:07-cv-2001, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008). "The language of the forum-selection clause determines its scope, *Salis v. Am. Exp. Lines*, 331 Fed. App'x 811, 813 (2d Cir. 2009), and 'mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.'" *Mazzella Lifting Tech., Inc. v. Farmer*, No.: 1:16-cv-395, 2017 WL 4883238, at *6 (N.D. Ohio Jan. 20, 2017) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (3d ed.1998)).

According to the Sixth Circuit, words like "shall" and "exclusive" indicate a mandatory, rather than permissive, forum-selection clause. In *General Electric Co. v. G. Siempelkamp GmbH & Co.*, the parties agreed to the following forum-selection clause: "Place of jurisdiction for all disputes

9

arising in connection with the contract shall be at the principal place of business of the supplier. . . . The supplier is also entitled to file a suit at the principal place of business of the purchaser." *Gen. Electr. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994). The Sixth Circuit concluded that "[b]ecause the clause states that 'all' disputes 'shall' be at Siempelkamp's principal place of business, it selects German court jurisdiction exclusively and is mandatory." *Id.* (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 2, 15 (1972)). *See also, e.g., Mazzella*, 2017 WL 4883238, at *6 (concluding that forum-selection clause that provided that "such court *shall* have *sole* and *exclusive* jurisdiction" was a mandatory forum-selection clause); *Braman*, 2008 WL 611607, at *6 (concluding "[b]y virtue of the parties' use of the word 'exclusive,' the forum-selection clause in this case is explicitly mandatory, not permissive.").

Further, a forum-selection clause need not necessarily name a specific geographic location to be mandatory. For example, in *Siempelkamp*, the Sixth Circuit concluded that the parties unambiguously consented to German jurisdiction because the forum-selection clause provided that "all disputes . . . **shall be at the principal place of business of the supplier**"—i.e., in Germany, where the supplier was located. *G. Siempelkamp*, 29 F.3d at 1099 (emphasis added). In *Preferred Capital, Inc. v. New Tech Engineering, LP*, the parties were subject to the following forum-selection clause in a lease agreement:

> APPLICABLE LAW: This agreement shall be governed by, construed and enforced in accordance **with the laws of the State in which Rentor's principal offices are located** or, if this Lease is assigned by Rentor, the State in which the assignee's principal offices are located, without regard to such State's choice of law considerations and **all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within the State**, such court to be chosen at Rentor or Rentor's assignee's sole option.

10

*Preferred Capital, Inc. v. New Tech Engineering, LP*, No. 5:04-cv-2301, 2005 WL 8171307, at *3 (N.D. Ohio Mar. 8, 2005). The district court concluded that this forum-selection clause was enforceable and mandatory. *Id.* at *3-4. In *Egrsco, LLC v. Evans Garment Restoration, LLC*, the relevant forum-selection clause provided that "all actions . . . shall be commenced in the state or federal court of general jurisdiction, closest to where [Defendant's] principal business address is then located," and further, that "[Plaintiffs] agree that [Defendant] may enforce this Agreement in the courts of the state or states in which [Plaintiffs] are domiciled or the Franchised Business is located." *Egrsco, LLC v. Evans Garment Restoration, LLC*, No. 2:09-CV-358, 2009 WL 3259423, at *1 (S.D. Ohio Oct. 8, 2009). The *Egrsco* court concluded that the forum-selection clause was "even more clear than the one in [*Siempelkamp*]" because it "states that 'all disputes . . . shall be commenced' in the specified jurisdiction" and "makes an explicit exception . . . for suits brought by the Defendant to enforce the agreement against the Plaintiffs." *Id.* at *4. Accordingly, the court concluded the forum-selection clause was not permissive, vague, or unreasonable. *Id.*

Further, a valid mandatory forum-selection clause may provide for a choice of appropriate, but still exclusive, venues. For example, in *Mazzella*, the parties agreed to submit, for the purposes of venue, to one of four possible exclusive jurisdictions, either the state courts in Cuyahoga County, Ohio or Raleigh County, West Virginia, or federal court in the Northern District of Ohio or the Southern District of West Virginia. *Mazzella*, 2017 WL 4883238 , at *6. The forum-selection clause then provided that "[w]hichever of the foregoing courts in which a legal proceeding is first filed by one of the parties, such court *shall* have *sole and exclusive* jurisdiction over all matters and disputes arising from or related to such legal proceeding." *Id.* The Court concluded that, though the forum-selection clause allowed for four possible appropriate venues, the forum-selection clause's language

"clearly indicate[d] that jurisdiction [was] proper only in the selected forum." *Id.* (quoting *Braman*, 2008 WL 611607, at *6).  *See also, e.g., Ergsco*, 2009 WL 3259423, at *4 (concluding the forum-selection clause, which required venue in either the state or federal court closest to the defendant's principal place of business or allowed the defendant to also enforce the agreement in the state courts of the states in which the plaintiff was domiciled, was mandatory).

Conversely, "a permissive forum selection clause merely authorizes jurisdiction in the specified forum, but does not require that forum to be the exclusive venue for litigation." *Braman*, 2008 WL 611607, at *6 (citing *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002)).  For example, in *First Solar, LLC v. Rohwedder, Inc.*, the forum-selection clause read: "Rohwedder and First Solar **consent** to jurisdiction and venue of any state court situated in Hennepin County, Minnesota or federal court situated in the District of Minnesota as a forum for resolution of disputes by and between Rohwedder and First Solar." *First Solar, LLC v. Rohwedder, Inc.*, No. 3:04-cv-7518, 2004 WL 2810105, at *2 (N.D. Ohio Dec. 8, 2004) (emphasis added).  The district court found "the clause to be permissive rather than mandatory." *Id.* at *3.  The court reasoned that "[t]he clause only indicates that the parties to the contract 'consent to jurisdiction and venue' in Minnesota," and that "[t]his difference is analogous to the legal distinction between 'shall' and 'may.'" *Id.*

The Court concludes that the instant forum-selection clause is mandatory, not permissive.  The forum-selection clause provides that the TSA "***shall be*** construed" according to the "law applicable in the jurisdiction where Company is located," and further, that "the parties agree to the ***exclusive*** jurisdiction of the courts in such jurisdiction."  (Doc. No. 9-1, PageID# 143, emphasis added.)  This language clearly indicates that jurisdiction is proper only in the selected forum: "the

12

jurisdiction where Company is located." *Mazzella*, 2017 WL 4883238, at *6; *see also Siempelkamp*, 29 F.3d at 1099; *Braman*, 2008 WL 611607, at *6. The instant language is markedly different from the permissive language utilized in *First Solar*, in which the parties indicated that they consented to Minnesota jurisdiction, but did not explicitly require it. *See First Solar*, 2004 WL 2810105, at *3.

The Court is not persuaded by ACD's argument that because the forum-selection clause identifies the relevant jurisdiction in terms of the Company's location that the clause is permissive. (*See* Doc. No. 12, PageID# 199.) The Sixth Circuit concluded that the *Siempelkamp* forum-selection clause, which similarly did not name a specific geographical location (that jurisdiction for all disputes "shall be at the principal place of business of the supplier"), was mandatory, clearly selected German jurisdiction "exclusively," and should be enforced according to its terms. *Siempelkamp*, 29 F.3d at 1099. Likewise, here, the forum-selection clause tethers all TSA-related disputes to the "exclusive jurisdiction of the courts in such jurisdiction" where the Company is located. (Doc. No. 9-1, PageID# 143.) In other words, the forum-selection clause specifies that jurisdiction is exclusive *only* to the jurisdiction in which the Company is located.[2]

### 2. Where is the Company Located?

Concluding that the forum-selection clause is mandatory, not permissive, does not end the Court's inquiry. The TSA, on its face, does *not* specify that the mandatory forum is the District Court of Minnesota. Rather, the TSA provides that it will be construed "in accordance with and governed by the law applicable **in the jurisdiction where Company is located**, and the parties agree to the **exclusive jurisdiction of the courts in such jurisdiction**." (Doc. No. 9-1, PageID# 143, emphasis

---

[2] Because the forum-selection clause is mandatory, rather than permissive, the Court need not address ACD's arguments as to the private interests for or against transferring this matter. (*See* Doc. No. 12, PageID# 204-05.)

13

added.)  Thus, the Court must examine the contract to determine where the "Company is located."  If the "Company" is "located" in Ohio, then BSC has, via the TSA's enforceable mandatory forum-selection clause, waived the right to challenge venue in this district.

In *In re AmTrust Fin. Corp.*, the Sixth Circuit set forth the cardinal principles of contract interpretation under the federal common law[3]:

> The goal of contract interpretation under the federal common law is to effect the intent of the parties. *Wulf v. Quantum Chem. Corp.,* 26 F.3d 1368, 1376 (6th Cir.1994). To determine this intent, the law incorporates the traditional methods of contract interpretation. *Id.* Where a contract's meaning is clear on its face, that meaning controls. *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998). Where a contractual provision "is subject to two reasonable interpretations," however, that provision is deemed ambiguous, and the court may look to extrinsic evidence— "additional evidence that reflects the intent of the contracting parties"—to help construe it. *Wulf,* 26 F.3d at 1376 (citing *Smith v. ABS Indus.,* 890 F.2d 841, 846–47 n. 1 (6th Cir.1989); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112–13, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). The court may make presumptions and draw inferences from extrinsic evidence, though the goal is still to discern the parties' intentions. *Id.* (citing *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir.1993)).

*In re AmTrust Fin. Corp.*, 694 F.3d 741, 749-50 (6th Cir. 2012).

The Court first turns to the meaning of "Company," which is a defined term in the TSA.  On the first page of the TSA, the Agreement defines "Company" as: "**Boston Scientific Corporation**, a

---

[3] Several circuits have ruled that the law governing the contract, generally meaning the law identified in the contract's choice of law provision, governs the interpretation of the forum-selection clause.  *See Intrastate Distrib., Inc. v. Alani Nutrition, LLC*, No. 2:21-cv-10369, 2021 WL 5540849, at *2 (E.D. Mich. May 28, 2021) (listing cases).  However, in the Sixth Circuit, several courts have interpreted the Sixth Circuit's holding in *Wong v. PartyGaming, Ltd.*, that the enforceability of a forum-selection clause is governed by federal law, to also mean that courts should apply federal common law to the interpretation of the forum-selection clause as well.  *Id.*  In its Motion, BSC cites *In re AmTrust Fin. Corp.* to support its assertion that the Court may rely on extrinsic evidence if a contract is ambiguous.  (*See* Doc. No. 9, PageID# 134.)  However, neither party addresses whether the Court should apply federal common law, Minnesota law, or Ohio law, to interpret the TSA's forum-selection clause (despite BSC's reliance on a case applying federal common law to interpret the terms of a contract).  Ultimately, even if the Court applied Minnesota's or Ohio's laws of contract interpretation, the outcome would be the same as the cardinal principles of contract interpretation are the same across Minnesota, Ohio, and federal common law.  *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359 (Minn. 2009); *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320 (Minn. 2003); *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d, 216 (Ohio 2003); *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311 (Ohio 1996).

Delaware corporation having its offices at 300 Boston Scientific Way, Marlborough, MA 01752 ('Company')." (Doc. No. 9-1, PageID# 139.)  In other words, according to the plain text of the TSA, "Company" means "Boston Scientific Corporation," which has its offices in Marlborough, Massachusetts.  The Court concludes that the term "Company" refers to Boston Scientific Corporation in its entirety.

The Court is not persuaded by BSC's assertion that to appropriately interpret the forum-selection clause, the Court should look to the jurisdiction "where Boston Scientific's relevant business," the Peripheral Interventions division, is located.  (Doc. No. 9, PageID# 133-34.) Interpreting the TSA according to BSC's reading would require the Court to narrow the term "Company," which is clearly defined as the "Boston Scientific Corporation," to only a particular subdivision of BSC, the Peripheral Interventions division.  There is no basis in the plain text of the TSA to narrow the scope of the term "Company".  The TSA does not mention the Peripheral Interventions division, nor the specific cryoablation business upon which ACD's and BSC's former relationship was based.  The term "Company" clearly and unambiguously means the "Boston Scientific Corporation," whose offices are in Marlborough, Massachusetts.  Thus, jurisdiction is proper wherever the Company—i.e., Boston Scientific Corporation, not Peripheral Interventions—is located.

Next, the Court turns to the term "located."  "Located" is not defined in the TSA so the Court will apply its plain, ordinary meaning.  The word "locate" means "to determine or indicate the place, site, or limits of" or "to set or establish in a particular spot: station".  *Locate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/locate (last visited 4/27/2022).  In other words,

15

"located" means a spot where the Company is placed, a site of the Company, or where the Company is established in a particular spot.

The term "located" is a broad term. *See Hanson Engineers, Inc. v. UNECO, Inc.*, 64 F. Supp. 2d 797, 801 (C.D. Ill. 1999). In *Hanson Engineers*, the district court considered the meaning of the term "located" within a forum-selection clause that read "all disputes and differences are to be submitted to the United States District Court of that District, where plaintiff is located." *Id.* at 797. The *Hanson* court emphasized that there was no indication that the term "located" had been narrowed in scope or had been given any special stipulated meaning within the context of the forum-selection clause and, thus, the normal definition of "located" applied. *Id.* at 801. The court noted that the term "located" was broader than a specific term such as "headquarters," because "while 'headquarters' could be limited to refer to one of several main offices, the term 'located' is not similarly restricted in scope." *Id.* Likewise, here, there is no indication that "located" has been narrowed in scope or means something more restricted than its plain meaning. The TSA indicates that jurisdiction is proper where the Company—not the Company's headquarters or a particular business division—is located.

However, the TSA does not identify the specific geographical location(s) where BSC is "located." Thus, the Court concludes that the term "located" is ambiguous only to the extent that the TSA does not identify the geographical sites where BSC is located. Accordingly, the Court will turn to extrinsic evidence to determine BSC's location(s). *See In re AmTrust Fin. Corp.*, 694 F.3d at 749-50. First, BSC is clearly located in Massachusetts. According to the Declaration of Amanda Seymour, who is "employed by BTG International Canada, Inc., an affiliate of Boston Scientific Corporation . . . as the Senior Manager, U.S. Sales Strategy for Boston Scientific's Peripheral Interventions business," BSC's "global headquarters" are in Massachusetts. (Doc. No. 17-1, ¶ 4.)

Moreover, the TSA identifies the "Company" as "Boston Scientific Corporation," which has offices at "300 Boston Scientific Way, Marlborough, MA." (Doc. No. 9-1, PageID# 139.) Second, BSC is also located in Minnesota, California, and Indiana. (Doc. No. 17-1, ¶ 4.) According to Seymour, BSC's "principal manufacturing and technology centers in the U.S. are located in Minnesota, California, and Indiana." (*Id.*) Third, according to Seymour, BSC is *also* located in Ohio. In her Declaration, Seymour declares that, while Boston Scientific's Peripheral Interventions business leaders are principally located in Minnesota, one member of the Peripheral Interventions' 33-member Senior Leadership Team "is *located* in Ohio." (*Id.* at ¶ 11, emphasis added.) Further, out of Peripheral Interventions' approximately 916 employees, 25 "are *located* in Ohio." (*Id.* at ¶ 12, emphasis added.) In other words, BSC is established in Ohio because it has multiple employees established in a particular spot (Ohio). Thus, because BSC is located in Ohio, among other places, this Court is one of a limited number of appropriate venues under the TSA's forum-selection clause in which ACD can bring a lawsuit.

The Court is not persuaded by BSC's argument that the Distribution Agreement's narrow forum-selection clause is extrinsic evidence of the parties' intent to consent exclusively to Minnesota jurisdiction. First, BSC had no hand in drafting the Distribution Agreement's forum-selection clause language, which clearly mandated jurisdiction exclusively in Minnesota. (*See* Doc. No. 9-3.) The Distribution Agreement was negotiated between ACD and Galil in July 2019, before BSC's acquisition of Galil or its subsequent negotiation of the TSA with ACD. (*Id.*) What ACD and Galil negotiated in their July 2019 Distribution Agreement does not reveal anything about ACD's and *BSC's* intentions in negotiating the July 2021 TSA. There is no evidence to suggest that BSC had a hand in drafting the Distribution Agreement's forum-selection clause. It is conceivable that BSC

17

preferred its own forum-selection clause language to that of Galil, and chose to incorporate the instant broader forum-selection clause into the TSA. Alternatively, if BSC *did* prefer Galil's narrower forum-selection clause, BSC could have negotiated for the narrower clause in the TSA. There is no evidence that BSC did so.

The Court is also not persuaded by BSC's repeated assertions that jurisdiction is only proper where the Peripheral Interventions business "is *based*," i.e., in Minnesota. (Doc. No. 9, PageID# 134, emphasis added.) The forum-selection clause does not use the word "based." It uses the word "located." "Based," like the word "headquarters," is narrower in scope than "located." The transitive verb "base" means "to make, form, or serve as a base for." *Base*, Merriam Webster, https://www.merriam-webster.com/dictionary/base (last visited 4/27/2022). The noun "base" means "a center or area of operations." *Id.* Thus, to be "based" in a location implies that that location is a "center" of operations. No doubt that Minnesota appears to be the "center" of BSC's Peripheral Interventions division. (*See* Doc. No. 17-1.) However, the TSA does not specify that jurisdiction is limited to where the Company is "based," only that jurisdiction is limited to where the Company is "located." The Company is located in several states, Ohio among them. (*Id.*)

Further, the Court is not persuaded by BSC's argument that, if the Court follows ACD's theory that "located" means any court with personal jurisdiction over BSC, then the Court rewrites the forum-selection clause to be permissive, rather than mandatory. (Doc. No. 9, PageID# 135.) The Court does not rely on its personal jurisdiction over BSC in reaching its decision. Rather, the Court has merely interpreted the plain meaning of "located"—to be established at a site—alongside the extrinsic evidence that BSC provided, to determine that BSC is located in at least Massachusetts, Minnesota, Ohio, California, and Indiana. BSC had the opportunity to negotiate over the forum-

18

selection clause's terms and settled on the broad term "located," rather than a narrower term like "based," and failed to specify that the relevant "Company" meant *only* BSC's Peripheral Interventions business, rather than BSC in its entirety.

Because the Court concludes that the TSA's forum-selection clause is mandatory, and that Ohio is one of a limited number of appropriate venues that may hear a dispute according to the TSA's forum-selection clause, the Court will not transfer this dispute to Minnesota. Therefore, the Court need not address the public-interest analysis under *Atlantic Marine*, as this case can proceed in the Northern District of Ohio. Accordingly, BSC's Motion to Transfer is denied.

## IV. Conclusion

For the reasons set forth above, BSC's Motion to Transfer Venue is denied. ACD's Motion for Leave to File a Sur-reply is denied.

**IT IS SO ORDERED.**

                                                                   *s/Pamela A. Barker*
                                                           PAMELA A. BARKER
Date: April 28, 2022                                  U. S. DISTRICT JUDGE